## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JOE T. SMITH AND (2) JAMIE SMITH     ) | |
|     ) | |
|        Plaintiffs,     ) | |
| vs.     ) | |
|     ) | |
| (1) SENTINEL INSURANCE COMPANY, LTD.,     ) | Case No. 4:10-cv-269 |
| a Connecticut corporation;     ) | |
|     ) | |
|        and     ) | |
|     ) | |
| (2) THE HARTFORD FINANCIAL SVCS.     ) | |
| GROUP, INC., a Delaware corporation,     ) | |
|     ) | |
|        Defendants.     ) | |

## PLAINTIFFS' RESPONSE AND OBJECTION TO THE HARTFORD'S MOTION TO DISMISS AND BRIEF IN SUPPORT

For their Response and Objection to The Hartford Financial Services Group, Inc.'s Motion to Dismiss (the "Motion"), the Plaintiffs respond as follows with the below brief in support thereof:[1]

### INTRODUCTION

Counsel for The Hartford Financial Services Group, Inc. ("The Hartford") suggests that The Hartford is merely a holding company, is not an insurer, and had no role whatsoever concerning the issuance of, collection of premiums for, receiving notice of loss, adjusting the loss, or denying the claim for storm damage with respect to the Plaintiffs' homeowners insurance policy covering their primary residence (the "Subject Policy"). The position adopted by The Hartford is

---

[1] Should the Court so Order, counsel for Plaintiffs would welcome oral argument on the Motion pursuant to LCvR 78.1.

interesting because, under Oklahoma law, either The Hartford is an insurance company in the business of insurance, or The Hartford is conceding that it committed fraud by representing to the Plaintiffs (and the Oklahoma public at-large) that it is an insurance company in the business of insuring their persons, assets, and property against loss.

After reviewing the evidentiary representations made by The Hartford in the Motion, and, upon further examination of the entire transaction between Plaintiffs and The Hartford commencing with the purchase of the Subject Policy and continuing through the wrongful denial of the claim for roof damage from a covered peril, the facts overwhelmingly show that The Hartford is liable to Plaintiffs, both in contract and in tort, for its demonstrably active role concerning the Subject Policy. Accordingly, The Hartford is a proper party defendant to this action.[2] For the many reasons set forth below, The Hartford's Motion should be denied.

## ARGUMENT AND AUTHORITY

**1.      The Motion must be treated as one for summary judgment.**

The Hartford attached four (4) exhibits to the Motion, one of which is an affidavit from The Hartford's Corporate Secretary. Because The Hartford's counsel has presented matters outside the pleadings by attaching exhibits to the

---

[2] Because the subject matter concerning the Plaintiffs' Motion for Leave to Amend their Complaint and this Motion overlap to a certain extent, many of the exhibits attached to the Motion for Leave to Amend the Complaint are also attached to the instant Response and Objection.

Motion, it must be treated as one for summary judgment for adjudicative purposes. *See* Fed. R. Civ. P. 12(d); *See* also *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709 at 713-14 (10th Cir. 2005).

    A.    *Summary Judgment Standard*

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793 at 796 (10th Cir. 1995).   When applying this standard, the Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Id.* An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Id.*, and citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510.

Construing the facts in a light most favorable to Plaintiffs, it is clear that there is a substantial controversy as to The Hartford's involvement in the entire transaction between the parties which negates The Hartford's Motion.   The Hartford has not met its burden to prevail on summary judgment.

**2.    The evidence demonstrates that The Hartford represented that it was an insurer, in the business of insurance, and directly associated with the Subject Policy.**

    A.    *The Plaintiffs were in contractual privity with The Hartford.*

In the Motion, counsel for The Hartford suggests that The Hartford "does not sell insurance" and "is not an insurance company". Motion to Dismiss at pg.

2.  In an accompanying affidavit, Ricardo Anzaldua informs the Court that The Hartford allegedly "is not an insurance company and it is not authorized to sell insurance in the State of Oklahoma." Motion to Dismiss at Ex. B.  Counsel for The Hartford additionally suggests that The Hartford "had no role in issuing the policy or handling Plaintiffs' claim." Motion to Dismiss, at pg. 2.

The facts readily demonstrate otherwise:  The Plaintiffs were in contractual privity with The Hartford as is evidenced both by The Hartford's Subject Policy, the litany of correspondence sent directly to the Plaintiffs, and the various promotional materials that The Hartford disseminates regarding its "own" Sentinel insurance policies.   At all times pertinent to this lawsuit, the Plaintiffs were informed that their homeowners insurance policy was with The Hartford, and, as the direct result of The Hartford's numerous representations to the Plaintiffs, were under the impression that The Hartford was the entity administering the Subject Policy. *See* Affidavit of Joe T. Smith, attached hereto as Exhibit "1", and at ¶ 4.

As but one example among many, Christopher T. Valvo, Outside Claims Specialist for The Hartford, specifically advised the Plaintiffs that he would be handling the claim on behalf of The Hartford. *See* Ex. 1, at ¶ 9.  *See* also Letter from Christopher T. Valvo on The Hartford's Letterhead dated April 22, 2008, attached hereto as Exhibit "2"; *See* also Letter from Christopher T. Valvo on The Hartford's Letterhead dated June 25, 2008, attached hereto as Exhibit "3".  Per the letter of April 22, 2008, Christopher T. Valvo, as Outside Claims Specialist for The Hartford, advised the Plaintiffs that they would "hear from your Hartford

4

claim representative within one business day of reporting the claim." *See* Ex. 2 at pg. 2.

Plaintiffs obtained the Subject Policy from an insurance agency that, at all times pertinent to this action, represented that it sold insurance products from The Hartford. *See* Invoice #21378 from McMasters Insurance Counselors, related entity of the Joe West Company, attached hereto as Exhibit "4". The invoice clearly denotes that the company issuing the policy is "Hartford Insurance Co." *Id.*

The cover page of the Certified Copy of the Subject Policy appears as "The Hartford Homeowners 5 Insurance Policy Comprehensive Form", contains a prominently displayed copy of The Hartford's so-called "Stag" logo[3], and advises the customer to "Call your Hartford Insurance representative" to obtain a flood insurance policy. *See* Certified Copy of Subject Policy, attached hereto as Exhibit "5". The Hartford's "Stag" logo appears eight (8) times throughout the Certified Copy of the Subject Policy. *Id*, at pg. 1, 42, 44, 45, 47, 49, 50, 64.

Meanwhile, the Certified Copy of the Subject Policy contains *no* explicit references to the Defendant Sentinel Insurance Company, Ltd. ("Sentinel"). *Id.* In fact, the Certified Copy is signed by Richard G. Costello, as Secretary for *The Hartford*, and by David Zwiener, as President for *The Hartford*. *Id.*, at pg. 39.

---

[3]   The Hartford provides an in-depth history of its "Stag" logo at http://www.thehartford.com/sites/hig/flash/stag/evolutionofthestag.html?&lid=stag +evolution. Presumably not as a matter of coincidence, there is no express reference to the Defendant Sentinel Insurance Company, Ltd., on said webpage.

*See* also The Hartford's press release stating "The Hartford Names Richard Costello Senior Vice President of Investor Relations", attached hereto as Exhibit "6" (noting that Mr. Costello was an "internal" hire).  *See* also Forbes profile of David K. Zwiener, attached hereto as Exhibit "7" (noting that Mr. Zwiener was the President and Chief Operating Officer of The Hartford).

Whenever the Plaintiffs were billed for renewal of the Subject Policy, The Hartford, by and through its Executive Officer, specifically thanked the Plaintiffs for "renewing with *The Hartford*." *See* Insurance Bills, attached hereto as Exhibit "8". Said bills, which prominently display The Hartford's "Stag" logo, further advised the Plaintiffs to "Call Your *Hartford* Agent" for "Coverage Questions Or Policy Changes." *Id.*

A phone call to 1-800-624-5578, which is the telephone number on the Plaintiffs' bills associated with "Billing Questions" greets the consumer with a pre-recorded message of, "Hello. Welcome to *The Hartford's* Customer Center." *Id.*; *See* also Ex. 1, at ¶ 5.  A phone call to 1-800-243-5860, which is the telephone number on the Plaintiffs' bills associated with "To Report A Claim" greets the consumer with a pre-recorded message of, "Thank you for trusting *The Hartford*. You have reached *The Hartford* Claim Service Center." *See* Ex. 8; *See* also Ex. 1, at ¶ 7.   At all times pertinent to this action The Hartford has continuously instructed the Plaintiffs to send their payments to "*The Hartford*, P.O. Box 2917, Hartford Connecticut 06104-2917." *See* Ex. 8.

The Hartford sent a renewal notice to the Plaintiffs on or about October 6, 2008, regarding the Subject Policy, which included an enclosed document styled as a "Continuations Page" for the Subject Policy. A copy of the same is attached hereto as Exhibit "9". In the renewal notice, Michael Concannon, Executive Officer of *The Hartford*, informed the Plaintiffs that "The Hartford and your independent insurance agent pledge to continue working hard to provide you with the best value in homeowners insurance." *Id.*, at pg. 1.

The renewal correspondence, including the Continuations Page, contains *twelve* conspicuously placed instances of The Hartford "Stag" logo. *Id.*, at pg. 1, 2, 4, 6, 8, 9, 11, 13, 14, 27, 30, 34. In the Continuations Page document, The Hartford specifically provided the "Privacy Policy and Practices of The Hartford Financial Services Group, Inc. and its Affiliates." *Id.*, at pg. 32-33. Additionally, The Hartford further advises its customers to "review and obtain information of *The Hartford's* producer compensation practices at www.*TheHartford*.com or at 1-800-592-5717." *Id.*, at pg. 34.

A phone call to 1-800-592-5717 begins with the following pre-recorded message:

> Thank you for calling The Hartford. This recorded message describes The Hartford's general producer compensation policies and practices. This message lasts approximately 15 minutes. All of the information in this recorded message appears on The Hartford's website at www.TheHartford.com.

> *See* Ex. 9, at pg. 34; *See also* Ex. 1, at ¶ 8.

On the Plaintiffs' bank account statements from numerous banking institutions, the payments for the Subject Policy were logged as "*The Hartford* Ins. Premium 800-624-5578 CT". *See* Plaintiffs' bank account statements, attached hereto as Exhibit "10". As was stated above, a phone call to 1-800-624-5578 greets the consumer with a pre-recorded message of, "Hello. Welcome to *The Hartford's* Customer Center." *Id.*; *See* also Ex. 1, at ¶¶ 5-6.

The address for The Hartford is the same as the alleged address for The Defendant Sentinel Insurance Company, Ltd.: One Hartford Plaza, Hartford CT 06155. *See* Oklahoma Department of Insurance "Licensed Insurance Companies" list, attached hereto as Exhibit "11"; *See* also "Contact Us" from The Hartford's website, attached hereto as Exhibit "12".

Mr. Juan Andrade, who is listed as The Hartford's "President and Chief Operating Officer, Property and Casualty Operations" is also allegedly the "President" of the Defendant Sentinel Insurance Company, Ltd. *See* "Management Team" page from The Hartford, attached hereto as Exhibit "13"; *See* also Release from Texas Department of Insurance at pg. 4, attached hereto as Exhibit "14".

The Hartford broadcasts an advertisement to viewers in the Oklahoma television market which definitively states that The Hartford is engaged in the business of "*Insurance*. Investments. Retirement." *See* television ad from The Hartford, attached to the Motion but filed conventionally pursuant to CM/ECF

Administrative Guide of Policies & Procedures for the U.S. District Court for the Northern District of Oklahoma, as Exhibit "15".

The Hartford has specifically disseminated press releases concerning the Oklahoma market that it is both "one of the nation's largest *providers* of investment *and insurance products*" and "one of the nation's largest financial services *and insurance companies*".  *See* Press Release from The Hartford, attached hereto as Exhibit "16".

The Hartford has its own YouTube "channel" located at http://www.youtube.com/user/thehartford, which contains many of The Hartford's television advertisements.  In the "About Me" portion of the YouTube channel, The Hartford represents to the public as follows:

> Founded in 1810, The Hartford Financial Services Group, Inc. (NYSE: HIG) *is one of the largest insurance and investment companies* based in the United States, with offices in the United States, Japan, the United Kingdom, Canada, Brazil and Ireland.

> The Hartford *is a leading provider of life insurance, group and employee benefits, automobile and homeowners insurance* and business insurance – as well as investment products, annuities, mutual funds, and college savings plans.

Many of the various media advertisements on said YouTube "channel" repeatedly confirm the undeniable message that The Hartford is an insurance company that operates as an insurer.

In the promotional materials associated with The Hartford's Homeowners 5 Insurance Policy, The Hartford affirmatively represents that the so-called *Sentinel* coverage options, the same ones as in the Subject Policy, are offered through The

Hartford. *See* Sentinel for All Size Homes pamphlet published by The Hartford, attached hereto as Exhibit "17".

In the Sentinel pamphlet, The Hartford makes it abundantly clear that Sentinel coverage is offered through The Hartford. The headline states, "Pre-Packaged Savings on *Our* Most Popular Options." *Id.*, at pg. 1. (Emphasis added). The eye-catching graphic on the cover of the pamphlet, which prominently features two of The Hartford's "Stag" logos states, "*An unbeatable insurance value*". *Id.* (Emphasis added). The last page of the pamphlet bears a headline that reads, "The Hartford's Homeowners Portfolio" with a subtitle stating, "The Hartford offers many benefits and discounts that give your customers more for their *insurance* dollar and a higher level of security. *Id.*, at pg. 6.

Apparently, The Hartford has specifically warned its agents that they are to push "their" Sentinel automobile insurance packages to consumers, or said agents "could be suspended from placing any new business with [The] Hartford" upon issuing non-Sentinel policies to The Hartford's customers. *See* April 2009 Online Newsletter for insurance agents produced by Select Insurance Marktets, LP,[4] attached hereto as Exhibit "18". *See* also accompanying Sentinel Policy Package Coverage Comparison – Auto,[5] attached hereto as Exhibit "19" (noting both that

---

[4] Available online at:
http://www.selectinsurancemarkets.com/pdf/newsletter/SIMNewsletterApril2009.pdf
[5] Available online at:
http://www.selectinsurancemarkets.com/pdf/SentinelPolicyPackageCoverageComparison.pdf

the policies are issued through The Hartford and that "homeowners account is with The Hartford, regardless of policy type").

The Hartford's claim file contains numerous instances demonstrating that The Hartford had an integral role in processing the claim pursuant to the Subject Policy. *See* pages from claim file, attached hereto as Exhibit "20". Mr. James Madsen, Inside Claim Rep. for The Hartford, both has an email address from TheHartford.com and informed Plaintiffs that he was "your contact at The Hartford for this Loss Event." *Id.*, at pg. 1. The claim file specifically notes that "this loss has already been INSPECTED TWICE by [The] [H]artford staff adjuster". *Id.*, at pg. 2.

Mr. Christopher T. Valvo, Outside Claim Specialist for The Hartford, accepted correspondence at an address for "The Hartford". *Id.*, at pg. 3. Further (and as was referenced above), Christopher T. Valvo repeatedly sent the Plaintiffs correspondence on The Hartford's letterhead which was from The Hartford at an address of The Hartford, and he specifically informed the Plaintiffs that he was The Hartford's contact for their claim. *See* Exs. 2 and 3.

The Hartford's own engineering report from Haag Engineering Company was specifically requested at the behest of The Hartford for Mr. James Madsen. *See* Cover of Haag Engineering report, attached hereto as Exhibit "21".

Given such a complete and incontrovertible background wherein The Hartford has both signed off on the Subject Policy and performed a demonstrably active role in the administration of the Subject Policy, the evidence shows that the

11

Plaintiffs were in contractual privity with The Hartford. There can be no other legitimate explanation for The Hartford's predominant presence with respect to the Subject Policy. Accordingly, the Motion must be denied.

> **B.** *Even if the Court finds that the Plaintiffs were not in contractual privity with The Hartford, the Plaintiffs have pled evidence which sufficiently demonstrates that The Hartford should remain a party defendant to this action.*

If the representations made in the Motion and to the Court are, in fact, true, and The Hartford is merely a holding company, not in the business of insurance, and/or its *modus operandi* is to not be an insurer, then The Hartford has conceded that its corporate existence is being used to perpetuate a fraud upon the Plaintiffs and the Oklahoma public generally.

36 Okla. Stat. § 1204(2) provides:

> **False information and advertising generally.** Making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine, or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way an advertisement, announcement or statement containing any assertion, representation or statement *with respect to the business of insurance or with respect to any person in the conduct of his insurance business which is untrue, deceptive or misleading.* No insurance company shall issue, or cause to be issued, any policy of insurance of any type or description upon life, or property, real or personal, whenever such policy of insurance is to be furnished or delivered to the purchaser or bailee of any property, real or personal, as an inducement to purchase or bail said property, real or personal, and no other person shall advertise, offer or give free insurance, insurance without cost or for less than the approved or customary rate, in connection with the sale or bailment of real or personal property, except as provided in subsection B, Section 4101 of Article 41 (Group Life Insurance and Group Annuity Contracts).

> *No person that is not an insurer shall assume or use any name which*
> *deceptively infers or suggests that it is an insurer.[6]*

36 Okla. Stat. § 1204(2) (Emphasis added).

Given the various attachments made to this pleading, any reasonable person would be left with the impression that The Hartford is an insurer after reviewing the same. Indeed, The Hartford clearly wants the public to believe that it is an insurance company.

On a number of occasions and through various mediums ranging from the Subject Policy itself, to its correspondence with Plaintiffs, to the invoices demanding payment for the Subject Policy premiums, to its telephone numbers, to its media advertisements, to its pamphlets and promotional materials, The Hartford has represented to the Plaintiffs that it is an insurer, and it intends for the public to rely thereon that it is in the business of insurance, and directly associated with the Plaintiffs' homeowners insurance policy. Based upon the representations of The Hartford and its agent, Plaintiffs both relied upon said representations and believed that they were insured by The Hartford. *See* Ex. 1, at ¶¶ 2-4. It is only when The Hartford is sued that it tries to deny its involvement in insuring Oklahomans and in particular, the Plaintiffs. Accordingly, The Hartford's conduct amounts to *prima facie* evidence of fraud under Oklahoma law.

Oklahoma law is clear that the separate legal existence of two corporate entities may be disregarded where (a) the separate corporate existence is a design

---

[6] Corporations, such as The Hartford, are included under the definition of "Person" pursuant to 36 Okla. Stat. § 1202.

to perpetuate a fraud; (b) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation; and/or (c) the parent corporation is the alter ego of the subsidiary corporation. *See Tara Petroleum Corporation v. Hughey*, 1981 OK 65, 630 P.2d 1269 at 1275; *See* also *Sautbine v. Keller*, 1966 OK 209, 423 P.2d 447 at 451-52.

As was explained above, if in fact The Hartford is not an insurer, then its corporate existence is being used to perpetuate the fraudulent misrepresentation to the public that it is an insurance company.   In addition to general common law principles, the Oklahoma statutes specifically prohibit any entity from suggesting that it is an insurer where it is not in the business of insurance.   The Subject Policy, handling of the Plaintiffs' claim, correspondence, advertisements, and promotional materials produced by The Hartford all suggest that The Hartford is an insurer.  The Hartford's fraudulent misrepresentations thus provide a basis upon which to impose liability on The Hartford.

Further, an adequate basis exists upon which to pursue The Hartford under instrumentality and/or alter ego theories of liability.  The Hartford and Sentinel share the same corporate address and have the same person serving as corporate president. *See* Exs. 11, 12, 13, and 14.  If The Hartford's arguments in the Motion are accepted as true, then The Hartford would have sent correspondence to the Plaintiffs from Hartford addresses on behalf of Sentinel. *See* Exs. 2, 3, and 20. The Subject Policy contains no explicit references to Sentinel Insurance Company, Ltd., but contains numerous references to The Hartford. *See* Ex. 5.  The Subject

Policy is signed by individuals who are or were members of The Hartford's corporate executive team. *Id.*, at pg. 39. The Hartford owns a 10% or greater stake in Sentinel. *See* Corporate Disclosure Statement, attached as Exhibit "C" to The Hartford's Motion. In fact, according to The Hartford's website, The Hartford owns a 100% stake in Sentinel as a "wholly owned subsidiary" of The Hartford. *See* "Company Information" heading from The Hartford's website, attached hereto as Exhibit "22".

Moreover and perhaps most importantly, because The Hartford has acted like an insurer in its dealings with Plaintiffs, a special relationship exists between The Hartford and Plaintiffs such that the duty of good faith and fair dealing must be imposed upon The Hartford. *See Badillo v. Mid Century Insurance Company*, 2005 OK 48, 121 P.3d 1080 at 1101 (noting the same). Even if The Hartford is not in fact an insurer with respect to the Subject Policy, it certainly has acted like one in its dealings with Plaintiffs.

The Subject Policy, handling of the Plaintiffs' claim, correspondence, advertisements, and promotional materials attached hereto all demonstrate The Hartford dealing with the Plaintiffs as though it were an insurance company. The Plaintiffs detrimentally relied upon such representations from The Hartford. *See* Ex. 1, at ¶¶ 2-4. Consequently, the Court should extend the duty of good faith and fair dealing to The Hartford; in the event that it finds that the Plaintiffs are not in contractual privity with the Hartford.

All of the foregoing considerations show that The Hartford should not be dismissed as a party to this lawsuit.

**3.    Because the Plaintiffs have moved to institute a fraud claim against The Hartford, the Motion should be further denied.**

Finally, counsel for The Hartford's attempt to dismiss The Hartford out of this action should further be denied in part because Plaintiffs have moved to institute a fraud claim against The Hartford.  The fraud claim, which is rooted in The Hartford's fraudulent misrepresentations that it was an insurer and the Plaintiffs' detrimental reliance upon the same, offers an additional basis establishing that The Hartford is a proper party defendant to this action.  The Hartford's untrue, deceptive, and misleading business practices are specifically prohibited according to the Oklahoma statutes and constitute fraud which has damaged the Plaintiffs.  In any event, should the Court ultimately grant the Plaintiffs' application for leave to amend their Complaint, then the Motion will be rendered moot.  *See Hampton v. Perez*, 2008 WL 4449653 (D. Colo. 2008) (holding that the granting of a motion for leave to amend complaint renders pending motion to dismiss moot).

## CONCLUSION

Due to the foregoing considerations, the Plaintiffs, Joe T. Smith and Jamie Smith, respectfully request that the Court wholly deny the Motion.

Respectfully submitted,

s/ Bradley A. Gungoll
Bradley A. Gungoll, OBA#3660
Wade D. Gungoll, OBA #21690

-of the Firm-

Gungoll Jackson
3030 Chase Tower
100 North Broadway
Oklahoma City, OK  73102
gungoll@gungolljackson.com
**Attorneys for Plaintiffs**


## Certificate of Service

☑   I hereby certify that on June 3, 2010 I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

David E. O'Meilia, OBA #6779
Phil R. Richards, OBA #10457
Amanda L. Stephens, OBA #22819
Richards & Connor, PLLP
ParkCentre Building, 12th Floor
525 South Main Street
Tulsa, OK  74103-4509

/s/ Bradley A. Gungoll
Bradley A. Gungoll