## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JOE T. SMITH AND (2) JAMIE SMITH )<br>)<br>    Plaintiffs, )<br>vs. )<br>)<br>(1) SENTINEL INSURANCE COMPANY, LTD., )<br>a Connecticut corporation; )<br>)<br>    and )<br>)<br>(2) THE HARTFORD FINANCIAL SVCS. )<br>GROUP, INC., a Delaware corporation, )<br>)<br>    Defendants. ) | Case No. 4:10-cv-269<br>GKF-PJC |

## PLAINTIFFS' RESPONSE AND OBJECTION TO
## THE HARTFORD FINANCIAL SERVICES GROUP, INC.'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

For their Response and Objection to The Hartford Financial Services Group, Inc.'s Motion for Summary Judgment (the "Motion"), and pursuant to Fed. R. Civ. P. 56 and LCvR 56.1, the Plaintiffs respond as follows with the below brief in support thereof:

## RESPONSE TO THE HARTFORD'S
## STATEMENT OF ALLEGED UNDISPUTED MATERIAL FACTS

1.      Denied.   At all times pertinent to this action, The Hartford Financial Services Group, Inc. ("The Hartford") represented to the Plaintiffs that it was the Plaintiffs' insurer.   *See* Exhibit "1", affidavit of Joe T. Smith; *See* also Exhibit "2", affidavit of Jamie Smith.   Further, The Hartford's agent that sold the Subject Policy to Plaintiffs was unable to furnish Plaintiffs with copies of the Subject Policy upon their request. Ex. 1 at ¶ 12; Ex. 2 at ¶ 12.

2.      Denied.   Consistent with the representations made from the Plaintiffs' insurance agent, The Hartford's own employees, and in The Hartford's own

1

advertising/promotional materials, The Hartford is the entity with whom the Plaintiffs contracted—the Plaintiffs were not even aware of the existence of Sentinel Insurance Company, Ltd. ("Sentinel"), until after the instant lawsuit was filed.  *See* Ex. 1 at ¶ 15; *See* also Ex. 2 at ¶ 15; *See* also April 22, 2008, letter from Christopher T. Valvo to Plaintiffs (written on The Hartford's letterhead) advising Plaintiffs that "[y]ou should hear from your Hartford claim representative within one business day of reporting a claim", attached hereto as Exhibit "3"; *See* also June 25, 2008, letter from Christopher T. Valvo to Plaintiffs (written on The Hartford's letterhead), attached hereto as Exhibit "4".

The phone numbers listed on the correspondence from Christopher T. Valvo, 1-800-811-4832 and 661-251-2957, are phone numbers associated with The Hartford, not with Sentinel Insurance Company, Ltd.  *See* Ex. 1 at ¶ 10; *See* also Exs. 3 and 4.

Moreover, the Plaintiffs paid their insurance premiums to "Hartford Insurance Co.".  *See* Invoice from The Hartford's agent, Andy Soares, attached hereto as Exhibit "5".  A review of the Plaintiffs' bank statements demonstrates that The Hartford specifically described the Plaintiffs' premium payments for their policy with The Hartford as "Hartford Ins. Premium" and "Hartford Insurance Bill Payment".  *See* Plaintiffs' Bank Statements, attached hereto as Exhibit "6".  The phone number listed by The Hartford on said bank statements, 1-800-624-5578, directs consumers to The Hartford, not to Sentinel Insurance Company, Ltd.  *See* Ex. 1 at ¶¶ 5-6; *See* also Ex. 6.

When the Plaintiffs renewed their homeowners' policy with The Hartford, The Hartford sent Plaintiffs bills that specifically thanked them for renewing with "The Hartford" and required Plaintiffs to send their premium payments to "The Hartford".  *See* Insurance Bills from The Hartford, attached hereto as Exhibit "7".  In said bills, Michael

Concannon, as Executive Officer for The Hartford, specifically represented to the Plaintiffs that they had "another year of homeowners insurance protection with The Hartford."   *Id.*, at pg. 5.   The phone number listed by The Hartford in said correspondence, 1-800-243-5860, directs consumers to The Hartford, not to Sentinel Insurance Company, Ltd.   *See* Ex. 1 at ¶ 7; *See also* Ex. 7 at pg. 5.   The same is true for 1-800-592-5717, which is the number that The Hartford furnishes for its "producer compensation practices."   *See* Ex. 1 at ¶ 8; *See also* Ex. 7 at pg. 33.

On multiple occasions, representatives from The Hartford informed Plaintiffs' insurance agent at the Joe West Company that they were the "contact[s] at The Hartford for this Loss Event."   *See* April 22, 2008, letter from Christopher T. Valvo to Joe West Company, attached hereto as Exhibit "8"; *See* May 1, 2008, letter from Christopher T. Valvo to Joe West Company, attached hereto as Exhibit "9"; *See* October 9, 2009, letter from James Madsen to Joe West Company, attached hereto as Exhibit "10"; *See* November 30, 2009, letter from James Madsen to Joe West Company, attached hereto as Exhibit "11".   The phone number listed by The Hartford on the aforementioned correspondence, 1-800-843-7006, directs callers to The Hartford's Catastrophe Claim Operations Center, not to Sentinel Insurance Company, Ltd.   *See* Ex. 1 at ¶ 11; *See also* Exs. 8 through 11.

In The Hartford's own promotional materials associated with its "Sentinel Platinum" policies (the same such policy as is at issue in the instant case), The Hartford represented to the public at-large, including Plaintiffs, that The Hartford is the entity that offers "Sentinel" policies.   *See* The Hartford's "Sentinel for All Size Homes" brochure, attached hereto as Exhibit "12" (Containing the suggestive language "Savings on Our

Most Popular Options", "your home will be best protected through a *Sentinel* endorsement to your Hartford Homeowners Policy", "The Hartford offers you a variety of other ways to save money on your homeowners insurance", "The Hartford offers higher deductibles to help you lower your premiums even further", and "All from The Hartford, an *insurance company* [emphasis added] with the financial strength, integrity and the commitment *to pay claims* [emphasis added] now—and down the road").

Additionally, The Hartford expends millions of dollars per year on various television advertising campaigns which perpetuate the undeniable message that The Hartford is an insurance company. One such ad, which has run in the Oklahoma market, is attached hereto but filed conventionally pursuant to CM/ECF Administrative Guide of Policies & Procedures for the U.S. District Court for the Northern District of Oklahoma, as Exhibit "13". The ad clearly conveys the message that The Hartford is an insurer. *Id.*

Further, The Hartford's online YouTube profile, found at www.youtube.com/user/thehartford, informs consumers that The Hartford is a 200-year-old "insurance and wealth management company." *See* YouTube profile, attached hereto as Exhibit "14". *See* also Ex. 1 at ¶ 14 (authenticating the same).

3. Denied. The Hartford specifically represents that a Sentinel "endorsement" is only an addition to "your Hartford Homeowners Policy." Ex. 12. Thus, consistent with both The Hartford's representations and according to what Plaintiffs understood in obtaining their policy, The Hartford issued the insurance policy at issue in this litigation. *Id.*, *See* also Ex. 1 at ¶¶ 2-4; Ex. 2 at ¶ 2-4.

4. Denied. The Subject Policy is replete with references to The Hartford and does not specifically reference Sentinel Insurance Company, Ltd. at any point therein.

*See* The Hartford's Exhibit "A".  In particular, the Subject Policy is expressly titled as "The Hartford Homeowners 5 Insurance Policy Comprehensive Form".  *Id.*, at pg. 1. Further, it advises consumers to "CALL YOUR HARTFORD INSURANCE REPRESENTATIVE".  *Id.*  Additionally, The Hartford's so-called "Stag Logo" is featured eight (8) times throughout the Subject Policy.  *Id.*, at pgs. 1, 42, 44, 45, 47, 49, 50, and 64 therein.[1]  Further, Richard G. Costello and David K. Zwiener, the Secretary and President who signed the Subject Policy respectively, served in such capacities for The Hartford.  *See* The Hartford's press release noting that Costello was the corporate secretary, attached hereto as Exhibit "15"; *See* also The Hartford's press release noting that Zwiener was the president of The Hartford's property and casualty operations, attached hereto as Exhibit "16".

5.      Plaintiffs admit only that the Declarations Page states that "Sentinel Insurance Company, Ltd." is the "insurer"; however, Sentinel was not the entity which represented it was the Plaintiffs' insurer.  *See* Ex. 1 at ¶¶ 2-4; *See* also Ex. 2 at ¶¶ 2-4. *See* also Exs. 3, 4, 7, 12, 13, and 14.  Sentinel was not the entity which corresponded with Plaintiffs regarding their claim.  *See* Exs. 3 and 4.  Sentinel was not the entity that corresponded with Plaintiffs' insurance agent.  *See* Exs. 8-11.  Sentinel was not the entity to whom the Plaintiffs paid their bills.  *See* Exs. 5, 6, and 7.  Sentinel was not the entity which adjusted the Plaintiffs' claim.  *See* Response to Fact No. 8, *infra*.

6.      Plaintiffs are without sufficient information to admit or deny whether Sentinel is solvent; however, Sentinel's relative solvency is irrelevant to the issues of

---

[1]  The Hartford provides an in-depth history of its "Stag" logo at http://www.thehartford.com/sites/hig/flash/stag/evolutionofthestag.html?&lid=stag+evolution.  Not as a matter of coincidence, there is no express reference to the Defendant Sentinel Insurance Company, Ltd., on said webpage.

whether The Hartford was the Plaintiffs' insurer, represented that it was an insurance company, received premium payments from Plaintiffs, adjusted the Plaintiffs' claim, and wrongfully denied the Plaintiffs' claim for benefits pursuant to the Subject Policy. *See* Exs. 1-14.

7.      Plaintiffs are without sufficient information to admit or deny whether Sentinel is in good standing with the Oklahoma Insurance Department because counsel for Sentinel refuses to produce any records relative to the Oklahoma Insurance Department to date.   In any event, Sentinel's "standing" with the Oklahoma Insurance Department is irrelevant to the issues of whether The Hartford was the Plaintiffs insurer, represented that it was an insurance company, received premium payments from Plaintiffs, adjusted the Plaintiffs' claim, and wrongfully denied the Plaintiffs' claim for benefits pursuant to the Subject Policy. *See* Exs. 1-14.

8.      Denied.   As is referenced above, The Hartford, not Sentinel Insurance Company Ltd., corresponded with Plaintiffs regarding their claim. *See* Exs. 1-4.  The Hartford, not Sentinel Insurance Company, Ltd., corresponded with the Plaintiffs' insurance agent regarding the Plaintiffs' loss event. *See* Exs. 8-11. *None* of the phone numbers listed on such correspondence direct callers to Sentinel Insurance Company, Ltd.  To the contrary, each phone number is specifically associated with The Hartford, not with Sentinel Insurance Company, Ltd. *See* Exs. 1 and 2.

Further damning to The Hartford's suggestion that Sentinel adjusted the claim is that *both* the GAB Robins North America, Inc. Agreed Appraisal Report and the Haag Engineering Company Report were specifically prepared for "The Hartford" and sent to "The Hartford" at The Hartford's own addresses. *See* GAB Robins North America, Inc.

Agreed Appraisal Report, attached hereto as Exhibit "17"; *See* also Haag Engineering Report, attached hereto as Exhibit "18".   Were Sentinel the entity that adjusted the Plaintiffs' claim, then obviously these reports would have been prepared for Sentinel. Instead, the reports clearly indicate that they were prepared for The Hartford at the request of the Hartford whose employees must obviously have represented to third parties that they were with The Hartford, not with Sentinel Insurance Company, Ltd.

9.      Admitted.

10.      Denied.  According to The Hartford's *own* Exhibit "D" at Page 2 thereof, "The Hartford Financial Services Group, Inc. . . .is an *insurance* and financial services company." (Emphasis added).  *See* also Exs. 12-14.  More to the point, at the settlement conference held on December 13, 2010, The Hartford presented Mr. Steve Lambert with *full settlement authority* on behalf of both The Hartford and Sentinel.  A copy of Mr. Lambert's business card is attached hereto as Exhibit "19".[2]   Thus, The Hartford assuredly employs individuals for the purposes of settling insurance claims, including the Plaintiffs' claim in this case.

11.      Admitted. Despite being unauthorized to sell insurance in Oklahoma, The Hartford deliberately represents to the Oklahoma public at-large that it is an insurer in direct contravention of 36 Okla. Stat. § 1204 which states in part, "No person that is not an insurer shall assume or use any name which deceptively infers or suggests that it is an insurer."  *See* Exs. 12-14.

---

[2] Plaintiffs anticipate that counsel for The Hartford may object to the admissibility of Exhibit 19 pursuant to Fed. R. Evid. 408.  However, any such objection would be misplaced because the exhibit is offered not for purposes of proving liability for the claim, but rather to demonstrate the obvious fact that The Hartford is indeed an insurance company because it employs personnel whose occupation is to settle insurance claims.

12.    Denied.  *See* Responses to Alleged Undisputed Material Facts Nos. 1, 2, 3, 4, 5, and 8, *supra*.  *See* also Exs. 1-19.

13.    Denied.  *See* Response to Alleged Undisputed Material Fact No. 8.  *See* also Exs. 1-4, 8-11, and 17-19.

14.    Denied.  As the materials attached hereto demonstrate, The Hartford does not operate distinct from Sentinel.  *See* Exs. 1-19. Further, the mailing address for The Hartford is the same as the mailing address for Sentinel:  One Hartford Plaza, Hartford CT  06155.  *See* Oklahoma Department of Insurance "Licensed Insurance Companies" list, attached hereto as Exhibit "20".  *See* also "Contact Us" from The Hartford's website, attached hereto as Exhibit "21".  As of October 2010, Mr. Juan Andrade simultaneously served as the President of The Hartford and the President of Sentinel.  *See* "Management Team" page from The Hartford's website, attached hereto as Exhibit "22"; *See* also Release from Texas Department of Insurance at pg. 4, attached hereto as Exhibit "23". Moreover, individuals holding executive positions with The Hartford, Richard G. Costello and David K. Zwiener, signed the Subject Policy in their respective corporate capacities with The Hartford.  *See* The Hartford's Ex. A at pg. 36; *See* also Exs. 15-16.

15.    Denied.  As is plainly evident from the materials attached hereto, The Hartford signs off on insurance policies, accepts premium payments for the issuance and administration of its insurance policies, corresponds with its insureds, adjusts claims, denies claims, and expends millions of dollars in advertising and promotional materials to propagate the message that it is an insurance company.  *See* Exs. 1-19.

16.    Denied.  The Hartford's representation that it "does not hold itself out to be an insurer" is a demonstrably false representation to this Court.  *See* Exs. 12-14, 19.

Counsel for The Hartford cannot offer a legitimate explanation as to why The Hartford specifically advertises that it is "an insurance company" with a commitment to "pay claims" and why members of The Hartford's corporate board sign off on insurance policies. *See* The Hartford's Exhibit "A" at pg. 36; *See* also Exs. 15-16. Similarly, The Hartford cannot offer a legitimate explanation as to why executives with The Hartford's corporate board signed the Subject Policy. *See* The Hartford's Exhibit "A" at pg. 36. The Hartford has specifically disseminated press releases concerning the Oklahoma market that it is both "one of the nation's largest *providers* of investment *and insurance products*" and "one of the nation's largest financial services *and insurance companies*". *See* Press Release from The Hartford, attached hereto as Exhibit "24".

17.     Admitted.

## BACKGROUND

In their attempt to extricate The Hartford from the instant action, counsel for The Hartford suggests that The Hartford is merely a holding company, is not an insurer, and had no role whatsoever concerning the issuance of, collection of premiums for, receiving notice of loss, adjusting the loss, or denying the claim for hail damage with respect to the Plaintiffs' homeowners insurance policy (the "Subject Policy"). After reviewing the evidentiary representations made by The Hartford in the Motion, and, upon further examination of the entire transaction between Plaintiffs and The Hartford commencing with the purchase of the Subject Policy and continuing through the wrongful denial of the claim for roof damage from a covered peril, the facts overwhelmingly show that The Hartford is liable to Plaintiffs, both in contract and in tort, for its demonstrably active role

concerning the Subject Policy.  Accordingly, the Motion should be denied outright in accordance with the summary judgment standard.

However, even if the Court finds a lack of privity between Plaintiffs and The Hartford, the Court should nevertheless deny The Hartford's Motion for the reason that an adequate basis exists upon which to impose the duties of good faith and fair dealing upon The Hartford because it sufficiently acted as the Plaintiffs' insurer in this case.

**ARGUMENT AND AUTHORITY**

**1.      Summary Judgment Standard.**

 Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793 at 796 (10th Cir. 1995).  When applying this standard, the Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Id.*  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Id.*, and citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510.

Construing the facts and attached evidentiary materials in a light most favorable to Plaintiffs, it is clear that there are genuine issues of material facts as to The Hartford's involvement in the transaction between the parties such that The Hartford's Motion must fail.  The Hartford has not met its burden to prevail on summary judgment.

2.     **The evidence demonstrates that The Hartford represented that it was an insurer, in the business of insurance, and directly associated with the Subject Policy such that the Plaintiffs are in contractual privity with The Hartford.**

In the Motion, counsel for The Hartford rehashes the same arguments it made in its Motion to Dismiss—that The Hartford "is not an insurance company", "does not sell insurance", and "does not write insurance or adjust losses."  Motion at pgs. 6-7.  In the same affidavit which accompanied the Motion to Dismiss, Ricardo Anzaldua informs the Court that The Hartford allegedly "is not an insurance company and it is not authorized to sell insurance in the State of Oklahoma."  Motion at Ex. C.  Mr. Anzaldua further represents that The Hartford "did not adjust the Plaintiffs' insurance claim."  *Id.*  Counsel for The Hartford additionally suggests that The Hartford "had no role in issuing the policy or handling Plaintiffs' claim."  Motion, at pg. 6.  The facts readily demonstrate otherwise, and even more particularly so when viewed in the light most favorable to Plaintiffs, as is required under the summary judgment standard.

At all times pertinent to this litigation, the Plaintiffs were under the impression that The Hartford was their insurer, which is entirely the result of The Hartford's deliberate business practices.  *See* Exs. 1 and 2.  The Hartford's "claim representatives" corresponded with the Plaintiffs from The Hartford's addresses on The Hartford's letterhead.  *See* Exs. 3-4.  None of The Hartford's contact information, including e-mail addresses, physical addresses, and phone numbers, direct Plaintiffs and/or the public at-large to Sentinel Insurance Company, Ltd. *See* Ex. 1 at ¶¶ 5-8, 10, 11; *See* also Exs. 3-4, 6-11.  Moreover, the Subject Policy was signed by members of The Hartford's corporate board, written on The Hartford's paper stock, and features eight conspicuous instances of The Hartford's "Stag" logo.  *See* The Hartford's Exhibit "A" at pgs. 1, 39, 42, 44, 45, 47, 49, 50, and 64.  The Plaintiffs' agent represented that the Subject Policy was with The

Hartford.  *See* Ex. 1 at ¶ 2; *See* also Ex. 2 at ¶ 2; Ex. 5.  The Plaintiffs paid their bills to

The Hartford, not to Sentinel Insurance Company, Ltd.  *See* Exs. 6-7.  The Hartford

adjusted Plaintiffs' claim by specifically contracting with both GAB Robins North

America, Inc. and Haag Engineering Company.  *See* Exs. 17-18.  The Hartford employs

personnel whose occupation is devoted to settling insurance claims.  *See* Ex. 19.  All of

the foregoing is consistent with The Hartford's direct representations to Plaintiffs and the

public at-large that it is in fact an insurance company.  *See* Ex. 1 at ¶ 2-4, 14.  *See* also

Exs. 12-16, 24.

Given such a complete and incontrovertible background wherein The Hartford has

both signed off on the Subject Policy and performed a demonstrably active role in the

administration of the Subject Policy, the evidence shows that the Plaintiffs were in

contractual privity with The Hartford.  There can be no other legitimate explanation for

The Hartford's predominant presence with respect to the Subject Policy.  As such, The

Hartford's reliance upon case law standing for the proposition that "a parent corporation

is not liable for the obligations of its subsidiary" is without merit and the Motion must be

denied in accordance with the standard on summary judgment.

**3.**      **Even if the Court finds that the Plaintiffs were not in contractual privity with The Hartford, the Plaintiffs have pled evidence which sufficiently demonstrates that The Hartford acted sufficiently like an insurer such that there is a "special relationship" between Plaintiffs and The Hartford.**

In the Motion, counsel for The Hartford has obfuscated the applicable standard

under Oklahoma law as to whether the Plaintiffs may maintain a tortious cause of action

against The Hartford, should the Court find a lack of contractual privity between the

parties.  The applicable inquiry is simply:

> When a non-party to the insurance contract, based on the specific facts and
> circumstances existent, engages in activities or conduct such that it may be

found to be acting sufficiently like an insurer so that a special relationship can be said to exist between the entity and the insured, we have made it clear that imposition upon said entity of the same duty of good faith and fair dealing as that imposed on the actual insurer issuing the insurance policy is appropriate.

*Badillo v. Mid Century Insurance Company*, 2005 OK 48, 121 P.3d 1080 at 1101, and citing *Wathor v. Mutual Assur. Adm'rs, Inc.*, 2004 OK 2, 87 P.3d 559, 563.

Accordingly, The Hartford's reliance upon the non-precedential, non-Oklahoma *appellate* court authority of *Moore Group, Inc. v. Singletary*, 386 S.E.2d 411 (Ga. App. 1989) and *Herbert v. Allied Signal, Inc.*, 577 So.2d 1117 (La. App. 1991) offers no insight for the Court in this case. The sole inquiry is whether The Hartford sufficiently acted like an insurer in its dealings with Plaintiffs.

As Plaintiffs' evidence attached hereto demonstrates, The Hartford signs off on insurance policies, accepts premium payments for the issuance and administration of its insurance policies, corresponds with its insureds, adjusts claims, denies claims, and expends millions of dollars in advertising and promotional materials to propagate the message that it is an insurance company. See Exs. 1-24. Such evidence shows that The Hartford acted sufficiently like an insurer in its dealings with Plaintiffs such that the duty of good faith and fair dealing must be imposed upon The Hartford as a result of its special relationship with Plaintiffs.

The Hartford further misrepresents the dicta from *Sizemore v. Continental Cas. Co.*, 2006 OK 36, 142 P.3d 47, in incorrectly asserting that a "bad faith claim cannot be maintained against an entity which is not an insurer." As is referenced above, the governing standard in Oklahoma with respect to whether a tort claim can be maintained is whether a third party acts sufficiently like an insurer in its dealings with insureds. *See Badillo v. Mid Century Ins. Co.*, 2005 OK 48, 121 P.3d 1080 at 1101; *See* also *Wathor v.*

*Mutual Assur. Adm'rs, Inc.*, 2004 OK 2, 87 P.3d 559 at 563.  The Plaintiffs have pled sufficient evidence to establish that The Hartford sufficiently acted like an insurer in this case, particularly when such evidence is viewed in accordance with the summary judgment standard.

Moreover, the holding of *Sizemore v. Continental Cas. Co.*, 2006 OK 36, 142 P.3d 47, cannot be construed so as to overrule the binding precedent from the Oklahoma Supreme Court's *Badillo* and *Wathor* decisions, as The Hartford wrongly suggests.  In *Sizemore*, the Oklahoma Supreme Court was merely referencing the conventional analysis associated with an insured's bad faith claim against his/her insurer.  As an objective reading of its holding indicates, the *Sizemore* decision was not concerned with delineating the duties owed by a third party in dealing with insureds.

Additionally, The Hartford's reference to Title 36 of the Oklahoma Statutes is interesting because the evidence attached hereto demonstrates that, if The Hartford is not an insurance company, its business practices are clearly in violation of 36 Okla. Stat. § 1204(2) which provides in part, "No person that is not an insurer shall assume or use any name which deceptively infers or suggests that it is an insurer."  *See* Exs. 1, 2, 12-14, 24. Even still, The Hartford's conduct with respect to Plaintiffs indicates that it is "engaged in the business of making contracts of insurance" such that it can be properly considered an "insurer" under 36 Okla. Stat. § 103.  *See* Exs. 1-24.

## CONCLUSION

Due to the foregoing considerations, the Plaintiffs, Joe T. Smith and Jamie Smith, respectfully request that the Court deny the Motion for the reason that The Hartford is in contractual privity with Plaintiffs.  In the alternative and in the event the Court

determines there is a lack of contractual privity between Plaintiffs and The Hartford, the Plaintiffs respectfully request that the Court deny the Motion for the reason that Plaintiffs have pled evidence which indicates that The Hartford sufficiently acted like an insurer in its dealings with Plaintiffs such that The Hartford may be subjected to the duty of good faith and fair dealing.

Respectfully submitted,

s/ Bradley A. Gungoll
Bradley A. Gungoll,   OBA#3660
Wade D. Gungoll, OBA #21690

-of the Firm-

Gungoll Jackson
3030 Chase Tower
100 North Broadway
Oklahoma City, OK  73102
gungoll@gungolljackson.com
**Attorneys for Plaintiffs**

## Certificate of Service

☑   I hereby certify that on February 18, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

David E. O'Meilia, OBA #6779
Phil R. Richards, OBA #10457
Amanda L. Stephens, OBA #22819
Richards & Connor, PLLP
ParkCentre Building, 12th Floor
525 South Main Street
Tulsa, OK  74103-4509

/s/ Bradley A. Gungoll
 Bradley A. Gungoll