IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JOE T. SMITH and | ) | |
| (2) JAMIE SMITH | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10-cv-269-GKF-PJC |
| | ) | |
| (1) SENTINEL INSURANCE | ) | |
| COMPANY, LTD., | ) | |
| a Connecticut corporation, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| (2) THE HARTFORD FINANCIAL | ) | |
| SVCS. GROUP, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR PARTIAL SUMMARY JUDGMENT
OF THE DEFENDANT, SENTINEL INSURANCE COMPANY, LTD.**

Gerard F. Pignato, OBA No. 11473
PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
1120 Robinson Renaissance
119 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone:   (405) 606-3333
Facsimile:    (405) 606-3334
E-Mail:      Jerry@pclaw.org

**ATTORNEY FOR DEFENDANTS,
SENTINEL INSURANCE COMPANY, LTD.
AND THE HARTFORD FINANCIAL
SVCS. GROUP, INC.**

## **TABLE OF CONTENTS**

**PROPOSITION I:  SENTINEL CANNOT BE LIABLE FOR BAD FAITH
AS A MATTER OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1094 (Okla. 2005) . . . . . . . 10, 11

*Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991) . . . . . . . . . . . . . 8

*Christian v. American Home Assur. Co.*, 577 P.2d 899 (Okla. 1978). . . . . . . . . . . 7

*Garnett v. Government Employees Ins. Co.,* 186 P.3d 935, 944 (Okla. 2008) . . . . 9

*Mccorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583, 587 (Okla. 1981) . . . . . . . . . 11

*McCoy v. Oklahoma Farm Bur. Mut. Ins. Co.,* 841 P.2d 568, 572 (Okla. 1992) . . 8

*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1440 (10th Cir. 1993) . . . . . . . 8

*Sellman v. AMEX Assur. Co.*, 274 F.Appx. 655, 658 (10th Cir. 2008) . . . . . . . . . 11

*Southern Hospitality, Inc. v. Zurich American Ins. Co.*, 393 F.3d 1137,
1142 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Timberlake Construction Company v. USF&G*, 71 F.3d 335, 343
(10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Willis v. Midland Risk Ins. Co.*, 42 F.3d 607. 612 (10th Cir. 1994) . . . . . . . . . . . 8

**PROPOSITION II:        EVIDENCE   THAT   OTHER   HOMEOWNERS IN
PLAINTIFFS' NEIGHBORHOOD EXPERIENCED ROOF
DAMAGE AND REQUIRED A ROOF REPLACEMENT
AS A RESULT OF THE APRIL 8, 2008 STORM IS
INADMISSIBLE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rule 56(c)(2), FED. R. CIV. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**PROPOSITION III:** **PLAINTIFFS' CONTENTION THAT SENTINEL'S UTILIZATION OF HAAG ENGINEERING SUPPORTS AN INFERENCE OF BAD FAITH IS WITHOUT MERIT** .............................................. 14

*Watkins, et al v. State Farm Fire & Casualty Company, et al,* Dist. Ct., Grady County, State of Oklahoma, Case No. CJ-2000-303 ............................ 14

**PROPOSITION IV:** **INADMISSIBILITY OF EVIDENCE OF SENTINEL'S "CLAIM MANUAL"** ........................... 16

*Coblenz v. Oklahoma Farm Bureau Mut. Ins. Co.,* 915 P.2d 938 (Ok. Civ. App. 1995) ........................................................ 19

*Davis v. Mid-Century Inc. Co.,* 311 F.3d 1250, 1252 (10th Cir. 2002) ......... 19

*Hance v. Triton Ins. Co.,* 2007 WL 30281, *5 (E.D.Okla. 2007) ............. 20

*McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583 (Okla. 1981) ............ 19

*Olson v. State Farm Mutual Automobile Ins. Co.,* 174 P.3d 849 (Colo.App.2007)17

*O'Reilly v. Physicians Mut. Ins. Co.,* 992 P.2d 644, 647 (Colo. App. 1999) .... 18

*Skinner v. John Deere Ins. Co.,* 998 P.2d 1219, 1224 (Okla. 2000) ........... 19

*U.S. Fid. & Guar. Co. V. Hollerich & Walgenbach Co.,* 22 Ill.App.3d 156, 161, 319 N.E.2d 280, 285 (1974) .......................................... 18

*Vining v. Enterprise Financial Group, Inc.,* 148 F.3d 1206 (10th Cir. 1998) .... 20

**PROPOSITION V:** **PLAINTIFFS' "RESERVE" ARGUMENT IS EQUALLY UNAVAILING TO PLAINTIFFS** .................. 21

*Signature Dev. Cos. V. Royal Ins. Co. Of America,* 230 F.3d 1215, 1224 (10th Cir. 2000) ..................................................... 22

**CONCLUSION** .................................................... 22

**CERTIFICATE OF SERVICE** ....................................... 24

3

The Defendant, Sentinel Insurance Company, Ltd. ("Sentinel"), moves this Court, pursuant to Rule 56, FED. R. CIV. P. and Local Rule 56.1, to enter summary judgment in its favor with respect to Plaintiffs' bad faith claim and punitive damages sought by Plaintiffs. In support hereof, Sentinel submits its brief.

## INTRODUCTION

This action arises out of a dispute regarding a claim submitted by the Plaintiffs to Sentinel under its policy of insurance issued to the Smiths for alleged hail damage to the roof of their residence following a storm on April 8, 2008, that passed through the Tulsa area. The Plaintiffs made a claim upon the subject insurance policy for damage to their 15 year-old wood shake roof allegedly sustained as a result of the storm.

Sentinel had three different people – two adjusters and an engineer – look at Plaintiffs' roof at different times. None of them found evidence of hail damage related to the April 8, 2008 storm.

The Plaintiffs subsequently filed a petition alleging breach of contract and bad faith in Tulsa County District Court on April 6, 2010. Sentinel removed the lawsuit to federal court thereafter. Sentinel denies it breached its contract or committed bad faith, as alleged in this lawsuit. Sentinel contends it reasonably relied on its adjusters' and engineer's inspections and reports in denying the Plaintiffs' insurance claim. In short, Sentinel contends that a legitimate dispute as to the cause and extent of the loss exists, thus barring Plaintiffs' bad faith claim.

4

## STATEMENT OF MATERIAL, UNDISPUTED FACTS

1.     Plaintiffs were insured under a policy of insurance issued by Sentinel, Policy No. 38RBA 747413, with a policy period of November 15, 2007 through November 15, 2008. (Sentinel Policy, **EXHIBIT 1**).

2.     Plaintiffs allege that on April 8, 2008, a hail storm damaged the roof of their home. (Plaintiff's Petition, pg. 2, ¶¶11-12, **EXHIBIT 2**).

3.     Plaintiffs submitted a claim for the damage to the roof.  More than a year after the April 22, 2008 storm, and at least a year after Sentinel denied Plaintiffs' claim, Plaintiffs hired an "engineer" who determined the roof was damaged and needed to be replaced. [1] (Plaintiff's Petition, pg. 2, ¶13, **EXHIBIT 2**).

4.     On April 29, 2008, Outside Claims Specialist, Christopher T. Valvo ("Valvo") on behalf of Sentinel, inspected the Plaintiffs' roof and did not find hail damage.  On May 1, 2008, he issued a letter to the Plaintiffs denying their claim for roof damage. (Valvo letter, dated May 1, 2008,  **EXHIBIT 3;** Claim Notes, Bates Nos. Sentinel 109, **EXHIBIT 4**; Deposition of C. Valvo, pp. 115-116, 190-221, **EXHIBIT 5**).

5.     The Plaintiffs requested a re-inspection.  Valvo immediately requested that GAB Robins North America, Inc. (GAB) re-inspect the roof. (Deposition of C. Valvo, p. pp. 115-116, 190-221, **EXHIBIT 5**; Claim Notes, Bates Nos. Sentinel 111 – 112, **EXHIBIT 4**).

---

[1]Plaintiffs have referred to this person (Gene Walker of Gene Walker Construction) as an engineer, but Plaintiffs have never provided any evidence that he is really an engineer.  Sentinel questions Plaintiffs' representation in this regard.

6.     Rick Brownrigg, of GAB, inspected the roof and found normal wear and tear/deterioration with only minimal storm damage that could possibly be attributable to the storm or to foot traffic, but the loss was less than the amount of the policy deductible ($1,000.00).  On June 25, 2008, Valvo, relying both on the GAB report and his personal prior inspection, again issued a letter denying the Plaintiffs' claim.  (Valvo letter, dated June 25, 2008, **EXHIBIT 6;** GAB Report, dated June 25, 2008, **EXHIBIT 7**).

7.     Approximately 17 months after the April 8, 2008, storm, when the roof leaked after a September, 2009 rain and windstorm, the Plaintiffs sent new roof estimates addressed to Valvo, along with an October 8, 2009 letter from Walker Construction, LLC, which stated that the roof was a total loss and the loss was due to hail damage.  Walker Construction also sent a Google Map of the Plaintiffs' residential neighborhood, claiming it showed that nearly every house in the Plaintiffs' neighborhood required a full roof replacement.  (Walker Construction letter, dated October 8, 2009,  **EXHIBIT 8**; Google Map, **EXHIBIT 9** ).

8.     Based on this new information, Inside Claims Specialist James Madsen ("Madsen"), on behalf of Sentinel, requested Haag Engineering to inspect the subject roof and to render a report as to whether the alleged damage sustained by the Plaintiffs' residence was a result of the hail storm, as claimed by the letters/estimates submitted by Plaintiffs from various roofers.  On November 16, 2009, Haag Engineering rendered its report finding that the Smiths' roof did not sustain hail damage shortening the life of the roof, and the roof was in a deteriorated state and poor condition due to age and weathering.  Relying upon Haag

6

Engineering's report, Madsen issued a denial letter to the Plaintiffs on November 25, 2009, specifically referencing the Haag Engineering report.  (Haag report, dated November 16, 2009, **EXHIBIT 10**; Madsen letter, dated November 25, 2009, **EXHIBIT 11**).

9.      In the present lawsuit, Plaintiffs generally contend that Sentinel's investigation was biased and outcome-oriented.  (Plaintiffs' Answer to Sentinel's Interrogatory No. 8, **EXHIBIT 12**).

10.     Sentinel contends that it reasonably relied on its adjusters' and engineer's inspections and reports in denying the Plaintiffs' insurance claim.

### ARGUMENTS AND AUTHORITIES

**PROPOSITION I:**      **SENTINEL CANNOT BE LIABLE FOR BAD FAITH AS A MATTER OF LAW.**

A jury will have to determine whether Plaintiffs' wood shake roof had to be replaced because of wind and hail damage due to the storm of April 8, 2008, or because of normal deterioration over the course of 15 years.  However, Sentinel's request for summary judgment on Plaintiffs' bad faith claim should be granted, as should Sentinel's summary judgment motion with respect to Plaintiffs' claim for punitive damages.

The tort of bad faith was first recognized by the Oklahoma Supreme Court in *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla. 1978).  It arises from the insurer's implied duty to deal fairly and act in good faith with its insured.  *Southern Hospitality, Inc. v. Zurich American Insurance Co.*, 393 F.3d 1137, 1142 (10th Cir. 2004). The duty is not breached if the insurer refuses to pay a claim or litigates a dispute with its

insured if there is a legitimate dispute as to coverage, cause of loss, or the amount of the claim, and the insurer's position is reasonable and legitimate. *Id.* Said differently, "the insurer will not be liable for the tort of bad faith if it 'had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'" *Oulds v. Principal Mut. Life Ins. Co.*, 6 F3d. 1431, 1436 (10th Cir. 1993), quoting *McCoy v. Oklahoma Farm Bur. Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992).

In determining whether to pay a claim, the insurer must conduct an investigation "reasonably appropriate under the circumstances." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994), quoting *Buzzard v. Farmers Insurance Co.*, 824 P.2d 1105, 1109 (Okla. 1991). Sentinel's actions must be evaluated in light of the facts it knew or should have known at the time it was asked to perform its contractual obligation prior to the filing of the present lawsuit. *Oulds*, 6 F.3d at 1437.

Significantly, the issue as to Plaintiffs' bad faith claim is not whether Sentinel's conclusion was correct, but whether it was one which was patently unreasonable and motivated by bad faith. In this regard, the Oklahoma Supreme Court has held:

> Every insurance contract carries with it the duty to act fairly and in good faith in discharging its contractual responsibilities. A party prosecuting a claim of bad faith carries the burden of proof and must plead all the elements of the intentional tort. The essence of the tort is the unreasonable, bad faith conduct of the insurer. A central issue is whether the insurer had a good-faith belief and some justifiable reason for the actions it took or omitted to take that are alleged to be violative of the duty of good faith and fair dealing. Before an issue of the insurer's bad faith may be submitted to the jury, the trial court must first

8

> determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious.  It is not a breach of the duty of good faith for an insurer to resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim.

*Garnett v. Government Employees Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008).  In affirming the trial court's partial summary judgment for the insurer on the issue of bad faith, the *Garnett* court found that such was warranted inasmuch as the insured had "made no showing of any misconduct" by the claim handlers for the insurer.

Similarly, in the present case, when asked to respond to interrogatories seeking the acts which Plaintiffs claim demonstrated Sentinel's alleged bad faith, Plaintiffs provided only conclusions and pointed to nothing more than inadmissible documents establishing Plaintiffs' subjective and personal belief that Sentinel pre-judged their claim and conducted a biased investigation.

Plaintiffs have asserted that Sentinel did not handle their claim properly, claiming that virtually every house in Plaintiffs' neighborhood sustained roof damage necessitating a roof replacement as a result of the April 8, 2008 storm.  Plaintiffs also contend that Sentinel is liable for bad faith because Sentinel's first adjuster, Valvo, purportedly did not follow Sentinel's "claim manual," because Valvo purportedly prejudged Plaintiffs' claim, and thereafter conducted a biased investigation.  As a final fillup,  Plaintiffs argue that the professional engineer from Haag Engineering (David Teasdale) who signed off on the report finding that there was no hail damage to Plaintiffs' roof, has a checkered history because a

jury in an unrelated lawsuit filed against a different insurance company (State Farm) in Grady County, Oklahoma, allegedly found State Farm liable for bad faith *for using David Teasdale to adjust storm losses*. These issues will be discussed *infra*.

Simply stated, Plaintiffs' entire bad faith lawsuit is based on inadmissible evidence. The scant admissible evidence Plaintiffs offer to support their bad faith claim does not demonstrate that Sentinel's handling of the claim met "the minimum level of culpability necessary for liability against an insurer to attach [which] is more than simple negligence." *Badillo v. Mid-Century Ins. Co.*, 121 P.3d, 1080, 1094 (Okla. 2005).

Even if Plaintiff's proposed evidence is admissible, which it is not, it would not amount to unreasonable conduct in any event. "When a plaintiff bases a bad faith claim on an inadequate investigation theory, 'the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information.'" *Sellman v. AMEX Assur. Co.*, 274 F.Appx. 655, 658 (10th Cir. 2008) (unpublished) (quoting *Timberlake Construction Co. v. U.S.F.&G.*, 71 F.3d 335, 345 (10th Cir. 1995). The crux of Plaintiffs' argument in this case is that Sentinel disagreed with Plaintiffs' roofer regarding the nature and cause of the damage to Plaintiffs' roof. As Plaintiffs have not "show[n] that [Sentinel] overlooked material facts or 'that a more thorough investigation would have resolved the discrepancy' involved in the legitimate dispute, [plaintiffs] cannot claim bad faith based on an inadequate investigation." *Id.* (quoting *Oulds*, 6 F.3d at 1442). In the absence of "conflicting evidence from which

10

different inferences may be drawn regarding the reasonableness of [Sentinel's] conduct," *Badillo*, 121 P.3d at 1093, quoting *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981), Sentinel is entitled to summary judgment on Plaintiffs' bad faith claim.

Although further discussion of punitive damages should be unnecessary if summary judgment is granted in favor of Sentinel with respect to Plaintiffs' bad faith claim, it is important to point out that there is insufficient evidence to create a justiciable issue as to such damages. To warrant submission of a request for punitive damages to a jury under these circumstances, Plaintiffs must present evidence "of conduct rising to the level of reckless disregard or malice on the part of [Sentinel] . . ." *Id.* at 1105. The Oklahoma Supreme Court "has recognized that the availability of punitive damages in a case by an insured against his/her insurer for breach of the implied duty of good faith and fair dealing is not automatic, but rather, is governed by the standard applicable in other tort cases." *Id.* at 1106. Submission of the issue of punitive damages to a jury may be improper, even where there is evidence to support recovery of actual damages. *Id.*

Plaintiffs have not produced "competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred." *Id.* Again, as further demonstrated below, the evidence Plaintiffs hope to elicit and offer at trial is inadmissible. Simply stated, Sentinel's Motion for Summary Judgment as to the punitive damages issue should be granted, even if Plaintiffs' bad faith claim survives Sentinel's Motion for Summary Judgment.

**PROPOSITION II:**   EVIDENCE THAT OTHER HOMEOWNERS IN PLAINTIFFS' NEIGHBORHOOD EXPERIENCED ROOF DAMAGE AND REQUIRED A ROOF REPLACEMENT AS A RESULT OF THE APRIL 8, 2008 STORM IS INADMISSIBLE.

Rule 56(c)(2), FED. R. CIV. P., states:

(2)   ***Objection That A Fact Is Not Supported By Admissible Evidence.***  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Assuming several other homes in Plaintiffs' neighborhood suffered roof damage and required new roofs as a result of the storm of April 8, 2008, as Plaintiffs contend, this type of evidence is not admissible to prove that (1) Plaintiffs' roof suffered hail damage as a result of the April 8, 2008 storm, (2) Plaintiffs' roof required replacement as a result of the April 8, 2008 storm, and (3) coverage should have been afforded by Sentinel under its insurance policy for the damages claimed by Plaintiffs.  Likewise, any payments made by Sentinel to other homeowners in Plaintiffs' neighborhood as a result of the same storm are inadmissible.

Aside from the numerous hearsay problems associated with such evidence, the losses suffered by Plaintiffs' neighbors and/or the payments made by Plaintiffs' neighbors' insurers are not relevant and, thus, inadmissible because the neighbors' roofs may have been made of different roofing materials, may have been newer in age than Plaintiffs' roof, may have been more severely damaged than Plaintiffs' roof, and/or were likely insured under policies issued by other insurers, which policies were likely different in some respects than the policy issued to Plaintiffs by Sentinel.  Sentinel's adjusters and engineer independently determined

that Plaintiffs' 15 year-old wood shake roof showed signs of deterioration consistent with 15 years of age and exposure to the elements. If the same adjusters and engineer had inspected Plaintiffs' neighbors' roofs, they may have reached a different conclusion.

Plaintiffs cannot draw the conclusion that because their neighbors' roofs were allegedly damaged as a result of the April 8, 2008 storm, Plaintiffs' roof must necessarily also have been damaged. For the reasons stated above, Plaintiffs' theory in this regard is flawed and is inadmissible as evidence to support their objection to Sentinel's Motion for Partial Summary Judgment.

PROPOSITION III:    PLAINTIFFS' CONTENTION THAT SENTINEL'S UTILIZATION OF HAAG ENGINEERING SUPPORTS AN INFERENCE OF BAD FAITH IS WITHOUT MERIT.

Incredibly, Plaintiffs have argued that Sentinel's utilization of Haag Engineering in conjunction with its handling of Plaintiffs' claim constitutes evidence of bad faith. Plaintiffs' theory in this regard is based on a lawsuit filed in the District Court of Grady County, State of Oklahoma, in 2000. *Donald L. Watkins, et al v. State Farm Fire & Casualty Company, et al,* Case No. CJ-2000-303 (hereafter "Watkins"). *Watkins* was eventually certified as a class action and went to trial in Grady County in April 2006.

In *Watkins*, plaintiffs claimed their home suffered damages as a result of the May 3, 1999 tornado, and that they were insured at the time under a homeowners policy of insurance with State Farm. The plaintiffs alleged that State Farm committed numerous acts of bad faith, including, but not limited to, relying on engineering reports of Haag Engineering. One

of the principal claims that plaintiffs asserted against State Farm was that State Farm wrongfully withheld the standard 20% payment for contractors' overhead and profit from its payments of actual cash value benefits. (Amended Petition, **EXHIBIT 13**). On May 25, 2006, a Grady County jury returned general verdicts against State Farm for actual damages in the amount of $3,000,000.00, and for punitive damages in the amount of $9,906,950.00. (Verdict forms, **EXHIBIT 14**).

In the present case, Sentinel retained Haag Engineering after its adjusters, Valvo and GAB, had already determined, on separate inspections, that Plaintiffs' roof did not sustain hail damage as a result of the April 8, 2008 storm.  Haag Engineering concurred with the findings of Valvo and GAB.  In short, because Haag Engineering found no evidence of hail damage to Plaintiffs' roof as a result of the April 8, 2008 storm, and because the plaintiffs in *Watkins* alleged bad faith on the part of State Farm for retaining Haag Engineering, Plaintiffs make the leap in logic that Haag Engineering is inherently dishonest, that Sentinel knew that Haag Engineering was predisposed to disagree with the policyholder as to the nature and extent of their covered losses, and that Sentinel chose to retain and rely upon the recommendation of Haag Engineering, anyway.

Needless to say, Plaintiffs are unable to demonstrate through competent and admissible evidence that Haag Engineering is dishonest, that Haag Engineering actually believed that the damage to Plaintiffs' roof was caused by the April 8, 2008 storm but stated otherwise, that Sentinel knew about Haag Engineering's reputation, and that Sentinel knew

that Haag Engineering's opinion would be – and was – wrong, but accepted its advice anyway.

The *Watkins* suit and verdict is inadmissible in the present case and should not be considered by this court with respect to Sentinel's present Motion for Partial Summary Judgment. Frankly, Plaintiff's argument in this regard is not rational.

**PROPOSITION IV:   INADMISSIBILITY OF EVIDENCE OF SENTINEL'S "CLAIM MANUAL"**

Plaintiffs' contention that Sentinel's adjuster failed to follow the guidelines set forth in Sentinel's "claim manual,"[2] is without merit. Simply stated, Sentinel's Property Standards do not constitute a contract between Sentinel and the Plaintiffs. The insurance policy issued to the Plaintiffs is the only contract in existence between the two parties. In other words, the terms of Sentinel's insurance policy define the respective parties' duties to one another. As a result, Sentinel's duties to the Plaintiffs are defined entirely by the contractual terms within the subject policy, not the Sentinel Property Standards. The insurance policy does not mention, reference, adopt, or incorporate the Property Standards. The Property Standards are merely guidelines to assist claim handlers in the 50 states, as necessary. Every claim is different and there is no cookie-cutter approach to handling claims. Sentinel's insureds are not privy to the written Property Standards. Plaintiffs in the present case would not have even seen Sentinel's Property Standards if Sentinel had not been required to produce them

---

[2]At Sentinel, these documents are titled Property Standards, not "claim manual," and they have no bearing on any of the claims or issues in this case in any event.

in discovery. Thus, Sentinel's Property Standards are irrelevant in this matter, and should be excluded accordingly.

Although Oklahoma has not addressed this issue, courts from around the country have. In *Olson v. State Farm Mutual Automobile Ins. Co.*, 174 P.3d 849 (Colo.App.2007), the plaintiff brought suit against her insurance company claiming, in part, that State Farm committed bad faith by failing to inform plaintiff of when the statute of limitations ran on her UIM claim. *Id.* at 857. Specifically, the plaintiff alleged that language within State Farm's claims manual – *i.e.*, "'State Farm's claim philosophy is to pay what we owe, promptly, courteously and efficiently'– and its 'Commitment to Our Policyholders,' which included references to carrying out 'our part of the bargain' in good faith; explaining 'all relevant coverages'; and encouraging insureds to 'report all losses and avail themselves of all benefits'" – created a contractual duty on the insurer to inform the plaintiff of the statute of limitations period. *Id.*

In denying the plaintiff's contention, the court held that it would not "read such a duty into language that does not expressly create it." *Id.* Additionally, the court opined that plaintiff had failed to "establish that (1) the claims manual was incorporated into the insurance contract, (2) the insurance contract was ambiguous about the obligations the insurance company was required to perform, or (3) the manual was necessary to establish the intent of the parties." *Id.* In the end, the court found that "[w]ithout such a connection, the insured has not established that the claims manual created a legal obligation that would serve

as the basis for a breach of contract claim." *Id.* (citing *O'Reilly v. Physicians Mut. Ins. Co.*, 992 P.2d 644, 647 (Colo.App.1999) ("Extraneous evidence is admissible to prove the intent of the parties only when the terms of the instrument are ambiguous."); *U.S. Fid. & Guar. Co. v. Hollerich & Walgenbach Co.*, 22 Ill.App.3d 156, 161, 319 N.E.2d 280, 285 (1974) ("As a general rule a company manual is not a part of an insurance policy. It may, however, become so, provided it is embodied in the policy or an endorsement by clear and unmistakable terms, or by a reference thereto as governing the rights of the parties.") (Emphasis added).

Alternatively, if the Court finds that Sentinel's Property Standards are somehow relevant, the Court would be establishing an arbitrary standard of care based on Sentinel's Property Standards, and not the applicable standard under Oklahoma law. In Oklahoma, bad faith, *i.e.*, breach of the implied covenant of good faith and fair dealing, has grown completely out of case law. In other words, there are no "claim manuals" governing whether an insurance company has acted in bad faith. In fact, every single appellate opinion addressing the issue of bad faith relies upon other appellate opinions – ultimately *Christian*, 522 P.2d 899 (recognizing, for the first time, that "an insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in part").

The courts' exclusive role as creator of Oklahoma bad faith law is further demonstrated by the fact that an insurer's actions cannot be found to be in bad faith as a

matter of first impression. *Davis v. Mid-Century Inc.* Co., 311 F.3d 1250, 1252 (10th Cir. 2002) (citing *Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1224 (Okl. 2000)) ("For bad faith liability to attach, the law at the time of the alleged bad faith must be settled."); *Coblenz v. Oklahoma Farm Bureau Mut. Ins. Co.*, 915 P.2d 938 (Ok.Civ.App. 1995) (citing *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583 (Okla. 1981)) ("Given that the issue on appeal presented a question of first impression, we conclude that Insurer's withholding of full replacement value under the policy did not amount to an unreasonable bad faith conduct that would justify a finding of liability under the tort of bad faith"). Stated differently, the Oklahoma appellate courts have expressly stated that the courts – not a particular company's "claims manual" – control Oklahoma bad faith law.

In the present matter, if Sentinel's Property Standards are disclosed to the jury, it would be unfairly prejudicial to Sentinel, and it would mislead and confuse the jury because Sentinel would be governed by and held to a standard that is not based on Oklahoma case law. The issue of bad faith in Oklahoma is governed by the reasonableness standard. It is not governed by an insurer's internal guidelines. Thus, if Sentinel's guidelines are admissible in evidence, they will become the standard the jurors believe governs Sentinel's handling of the Smiths' UIM claim. Nothing could be further from the truth. The standard controlling an insurer's conduct in Oklahoma is Oklahoma case law.

As a comparison, the Eastern District of Oklahoma recently held that "[n]othing in the prevailing law and authorities in Oklahoma suggests that the mere failure to adopt a written

manual or train employees in bad faith is itself an act of bad faith." *Hance v. Triton Ins. Co.*, 2007 WL 30281, *5 (E.D.Okla.2007). In *Hance*, plaintiff relied on *Vining v. Enterprise Financial Group, Inc.*, 148 F. 3d 1206 (10th Cir.1998) and alleged that Triton's failure to train its adjusters or employ a claims manual constituted bad faith under Oklahoma law. *Id.* at *4. The court rejected the plaintiff's contentions and held, *inter alia*, that Oklahoma's laws "do not require that any 'reasonable standards' adopted be in writing or be in a formal claims manual." *Id.* Thus, the court stated it could not "perceive how the presence of a written manual would have altered the manner in which [the plaintiff's] claim would have been processed. . ." As a result, the court found that Triton did not breach its duty of good faith and fair dealing with the plaintiff and rejected plaintiff's contention.

More recently, on July 25, 2011, the Honorable H. Russel Holland, United States District Judge for the District of Alaska, entered an Order granting the Motion for Summary Judgment of the Defendant, Hartford Insurance Company of the Midwest, and addressed the issue of internal policies and practices. On page 17 of the Court's Order, the Court stated that "Defendant's internal policies and practices have little to no relevance to the issue of bad faith. . ." *Miller v. Hartford Insurance Co. of the Midwest*, Case No. 3:10-cv-0068-HRH, United States District Court for the District of Alaska, **EXHIBIT 15**.

Accordingly, it naturally follows that if an insurer cannot commit bad faith for failing to implement a claims manual or train its adjusters in Oklahoma bad faith law – with the understanding that Oklahoma does not require insurers to employ its "reasonableness

standard" in written form – an insurer that actually employs a claims manual, and goes above and beyond what is required under Oklahoma law, cannot be held to a different standard. In other words, if an insurer that does not implement a claims manual is only held to Oklahoma's reasonableness standard, then an insurer who actually employs a claims manual – in an effort to improve overall claims handling – should not be held to a heightened standard.

Simply put, if Sentinel's Property Standards become admissible in this case, Sentinel will be held to a different standard than what is required under Oklahoma law.   Without question, Sentinel's guidelines will mislead and confuse a lay jury.  Sentinel will be held to an arbitrary standard that likely proscribes conduct above and beyond what Oklahoma's "reasonableness standard" requires.  As a result, a lay jury will be misled and confused as to the applicable standard governing Sentinel's conduct.  In fact, it is highly likely that a jury would replace Oklahoma's "reasonableness standard" with the guidelines Sentinel or standards independently provides its own employees.

In short, Sentinel should not be punished by employing intra-company written guidelines or standards.  Sentinel's written guidelines increase the proficiency of its claims handling practices.  It should not be punished for going above and beyond what is required under Oklahoma law.

**PROPOSITION V:   PLAINTIFFS' "RESERVE" ARGUMENT IS EQUALLY UNAVAILING TO PLAINTIFFS.**

Plaintiffs have stated in their answer to Sentinel's Interrogatory No. 8 that, as additional grounds for their bad faith claim,

> The Defendants' own claim file shows that they intended to deny Plaintiffs' claim from the outset – regardless of the facts and circumstances presented to them by their insured. <u>To that end, the Defendants set their exposure at "$0" on April 22, 2008, prior to any inspection being conducted on the premises</u>.

(emphasis added) (**EXHIBIT 12**).  In other words, Plaintiffs seemed to suggest that Sentinel had not established or set a reserve two weeks after the storm in question, and that such failure to set a reserve so quickly constitutes evidence of bad faith.  Of course, Plaintiffs are unable to produce any authority for this misguided contention.  More importantly, Plaintiffs did not even notify Sentinel of their claim until April 22, 2008!  Thus, mere hours after Plaintiffs' first notice of loss, Sentinel posted a "$0" in its claim notes.  (Claim Notes for April 22, 2008, Bates Nos. Sentinel 107 – 108, **EXHIBIT 4** ).

Internal reserves established by an insurance company are an estimate of potential liability in connection with a claim.  They do not represent the insurer's judgment as to what a plaintiff should recover.  *See, generally, Signature Dev. Cos. v. Royal Ins. Co. of America*, 230 F.3d 1215, 1224 (10th Cir. 2000) (Reserve calculations are "merely an amount [the insurer] set aside to cover potential future liabilities.")  Reserves are not typically set until the insurer has gathered sufficient information to evaluate a claim.  Accordingly, and particularly given the timing of the purported $0 reserve set only two weeks after the storm and just a few

21

hours after Plaintiffs' first notice of loss, this evidence does not support an inference of bad faith.

### CONCLUSION

Three different adjusters/engineers hired by Sentinel determined there was no damage to Plaintiffs' roof as a result of the April 8, 2008 storm.  This is a classic legitimate dispute regarding the cause of loss.  Plaintiffs cannot seriously contend that Sentinel's investigation, through three separate, independent adjusters/engineers, was inadequate.  Moreover, Plaintiffs are wholly unable to suggest how a different type of investigation would have revealed a different result.

Plaintiffs' entire bad faith law suit is based on inadmissible evidence.  Evidence of a mere dispute under an insurance policy is insufficient to establish that an actionable bad faith claim exists, and no other *admissible* evidence has been offered by Plaintiffs as establishing such a claim.

There being no legally cognizable claim for bad faith presented by the undisputed evidence in this case, it is respectfully submitted that partial summary judgment for Sentinel on Plaintiffs' bad faith claim and claim for punitive damages is warranted and appropriate, leaving for trial only the questions of whether the damage to Plaintiffs' roof was caused from the April 8, 2008 storm, and if so, the amount of that loss.

Respectfully submitted,

s/ Gerard F. Pignato
GERARD F. PIGNATO, OBA No. 11473
PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
1120 Robinson Renaissance
119 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone:   (405) 606-3333
Facsimile:   (405) 606-3334
E-Mail:       Jerry@pclaw.org

                 and

Phil R. Richards, OBA No. 10457
David E. O'Meilia, OBA No. 6779
John P. Bennett, OBA No. 21888
RICHARD & CONNOR
12th Floor ParkCentre Bldg
525 South Main Street
Tulsa, Oklahoma 74103
Telephone:   918-585-2394
Facsimile:   918-585-1449

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Bradley A. Gungoll, Esq.                    **ATTORNEYS FOR PLAINTIFFS**
Wade D. Gungoll, Esq.
GUNGOLL, JACKSON, COLLINS, BOX &
DEVOLL, P.C.
Chase Tower 3030
100 North Broadway Avenue
Oklahoma City, Oklahoma 73102-8273
Telephone:     (405) 272-4710
Facsimile:      (405) 272-5141


                              s/Gerard F. Pignato
                              For the Firm